UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 C 5551 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

James Taylor ("Taylor") filed a two-count complaint in state court, containing a count brought under a provision of the Federal Employees' Liability Act, 45 U.S.C. § 51 ("FELA") and a common law negligence count, alleging that defendant, Norfolk Southern Railway Company ("NS"), is liable to him under FELA for injuries he suffered on January 18, 2016 in NS' Calumet Yard. NS removed this case to this court, alleging that Taylor's FELA claim is frivolous. Taylor moves to remand. Based on the following analysis, the court concludes that NS has raised a substantial question on Taylor's FELA claim and provides him with an opportunity to supplement the record in response to the evidence attached to NS' response to his motion to remand.

**I. Background**

Taylor alleges that although his actual employer was ITS Technologies and Logistics ("ITS"), he was at the time of the accident serving "as a contractor for the railroad; or he was the joint employee of the railroad and ITS TECHNOLOGIES AND LOGISTICS; or he was the subservant of ITS TECHNOLOGIES AND LOGISTICS that was the servant of the railroad." (Compl. ¶ 5, ECF No. 2, Ex. A.) Taylor alleges that he was called to a meeting by a NS

1

employee at the Calumet yard and was "performing a task integral to the operation of the railroad," rendering him an employee of the railroad for purposes of FELA. (Compl. ¶¶ 6, 7.)

NS has removed the case to federal court. While acknowledging that removal of a FELA action is prohibited by 28 U.S.C. § 1445(a), *LaDuke v. Burlington N.R. Co.*, 879 F.2d 1556, 1561 (7th Cir. 1989), removal is permitted where it has been established "beyond dispute" that there is no legitimate FELA claim, *Lackey v. Atlantic Richfield Co.,* 990 F.2d 202, 208 (5th Cir. 1993). Put another way, if the plaintiff's FELA claim, as pleaded in a complaint filed in state court, "is frivolous," remand should be denied, but "a claim cannot be said not to arise under the FELA . . . merely because it is found in the end not to be a meritorious claim." *Hammond v. Terminal R.R. Ass'n of St. Louis*, 848 F.2d 95, 97 (7th Cir. 1988) (citations omitted); *accord Bunnell v. Union Pac. R.R. Co.*, No. 07-cv-0686-MJR-DGW, 2007 WL 4531513, at *1 (S.D. Ill. Dec. 19, 2007).

NS argues that in this case, "there exists no reasonable basis in fact or in law to support a claim by Plaintiff against Norfolk Southern under the FELA." (Notice Removal ¶ 6, ECF No. 2.) FELA, NS properly asserts, covers only employees of the railroad "or, if not a direct employee, either a borrowed servant, dual servant or employee of a subservant of the railroad." (*Id.* ¶ 7.) Taylor was none of those things, NS argues.

In response to Taylor's Motion to Remand, NS has offered various affidavits which aver:

(1) James Taylor was at no relevant time an employee of NS. (Alderman Aff. ¶ 5, ECF No. 2-2.)

(2) James Taylor has been an employee of ITS since February 21, 1994, and he held the position of Operations Manager at ITS at the time of his accident on January 18, 2016. The primary responsibility of an Operations Manager at the Calumet Yard is planning, directing, and

coordinating all ITS activities relative to the loading and unloading of containers on railroad cars. (Bath Aff. ¶ 8, ECF No. 2-3.)

(3) ITS provides terminal services to common carriers by rail. Its employees work at various intermodal yards pursuant to agreements between ITS and the railroads serving those yards. (Bath Aff. ¶ 3.) ITS has a contract with NS at its Calumet Yard, the place of Taylor's injury, where ITS leases a portion of the yard for the operation of an intermodal terminal. (*Id.* ¶ 2.)

(4) ITS is not and has never been a subsidiary of NS. (Bath Aff. ¶ 5.)

(5) None of the agreements between ITS and NS allow NS to manage ITS personnel or ITS operations, or allow NS to direct ITS in its operations or the management and utilization of its employees. (*Id.* ¶ 6.) NS had no authority to supervise ITS employees and did not supervise ITS Operations Managers such as Taylor. (*Id.* ¶ 12.)

(6) Taylor was injured by a hostler truck owned and maintained by ITS. (Bath Aff. ¶ 13.) The hostler truck was being operated by Robert Gutierrez, an employee and agent of ITS. (*Id.* ¶ 15.) Gutierrez reported to and was under the control of the ITS Trailer Shop Manager at the Calumet Yard. The Trailer Shop Manager reported to the ITS Terminal Manager, not to anyone at NS. (*Id.* ¶ 16.) The hostler truck was carrying a chassis, which struck Taylor. The chassis was owned by TRAC, a chassis supplier. (*Id.* ¶ 24.)

(7) ITS decided how many men would work on projects at the Calumet Yard, how many machines should be used and which employees would operate which pieces of equipment. These decisions were driven by NS forecasts of the anticipated volume of rail traffic, but NS had no involvement in ITS manpower decisions. (Bath Aff. ¶ 18.)

(8) ITS handled safety issues at the Calumet Yard for its employees, including Taylor, based on ITS standardized safety rules; ITS and not NS provided the necessary training. (Bath Aff. ¶ 19.)

(9) NS had no authority over employee hiring at ITS, nor did NS have the right to fire ITS employees. (Bath Aff. ¶ 23.)

(10) NS management and ITS management held occasional meetings to troubleshoot problems regarding coordination of operations. Operations Managers like Taylor generally did not participate in such meetings. (Bath Aff. ¶ 21.)

(11) NS had no involvement at the time of the occurrence alleged in supervising any of the activities in which Taylor was engaged immediately prior to his injury or in any of the activities in which Taylor was "generally engaged" as an Operations Manager for ITS. (Bath Aff. ¶ 25.)

(12) ITS employees working in Illinois are covered by the Illinois Workers' Compensation Act. (Kleppetsch Aff. ¶ 2.) As a result of procedures implemented by ITS, Taylor has received Illinois Workers' Compensation Act benefits since the date of his injury. ITS has paid all of Tylor's medical expenses, paid Temporary Total Disability benefits to him, and provided him with the services of a Nurse Case Manager. (*Id.* ¶ 3.)

## II. Analysis

It is well-established that the court may, in fact should, consider extrinsic evidence in determining whether plaintiff's FELA claim is legitimate. *Lackey*, 990 F.2d at 207; *Cullivan v. Kan. City S. Ry. Co.*, No. 09-cv-685-JPG, 2010 WL 378433, at *3 (S.D. Ill. Jan. 27, 2010). "A claim does not arise under the FELA merely because the plaintiff names that statute in his complaint . . . ." *Hammond*, 848 F.2d at 97. On the other hand, NS – "[t]he party invoking the

[c]ourt's jurisdiction [–] bears the burden of showing that the case is properly brought." *Cullivan,* 2010 WL 378433, at *1. Any doubts concerning removal should be resolved in favor of remand. *Id.*

Despite the fact that Taylor was employed by ITS, not by NS, there are nevertheless three methods by which he can establish his employment with a rail carrier for FELA purposes: first, if he was a borrowed servant of the railroad at the time of his injury; second, if he could be deemed to have been acting for two masters simultaneously; or third, if he was a subservant of a company that was a servant of the railroad. *Kelley v. S. Pac. Co.*, 419 U.S. 318, 324 (1974). "Critical to the analysis of both the borrowed servant and the dual servant theory is the issue of control." *Gowdy v. Norfolk S. Ry. Co.,* No. 07-CV-0365-MJR, 2007 WL 1958592, at *5 (S.D. Ill. July 2, 2007) (citing *Kelley*, 419 U.S. at 325-26). Taylor has recited each of these three possibilities in his complaint filed in state court, all in the alternative. Specifically, he alleges that at the relevant time and place, "Plaintiff was serving as a contractor for the railroad; or he was the joint employee of the railroad and ITS TECHNOLOGIES AND LOGISTICS; or he was the subservant of ITS TECHNOLOGIES AND LOGISTICS that was the servant of the railroad." (Compl., ¶5.) Beyond these conclusory allegations, Taylor explains merely that at the time and place alleged, he "was called over to a meeting by a NS employee at a NS yard located at or near 103rd Street and Doty Avenue in Chicago, Illinois, when he was seriously injured." (Compl., ¶6.)

Under federal pleading rules, see Fed. R. Civ. P. 8(a)(2), a plaintiff need not provide detailed allegations. Nevertheless, he must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Defendant has adequately put in issue the question of whether Taylor has a legitimate FELA claim or has done nothing more than name the statute. Taylor's complaint contains nothing but labels and conclusions. His position, which the court rejects, is that the court has no authority to address the issue of whether Taylor was an employee of the railroad for FELA purposes at this stage of the case. (Mot. Remand 3, ECF No. 7.) Rather, Taylor argues, extensive discovery is necessary to decide this issue – "extensive discovery that is ill-suited for a removal/remand proceeding." (Reply Supp. Mot. Remand 1, ECF No. 14.)

The court disagrees, at least to a point. While Taylor is correct that extensive discovery is ill-suited to the issue of removal or remand, *see, e g., Sabo v. Dennis Technologies, LLC*, No. 07-cv-283-DRH, 2007 WL 1958591, at *3–4 (S.D. Ill. July 2, 2007) (collecting authority and discussing reasons why postremoval discovery is disfavored), Taylor's complaint fails even the lax standards for adequate Rule 8 pleading under *Twombly*. Taylor's allegations that he was going to a NS meeting when he was injured gives the court no basis, other than speculation, for thinking that he can satisfy FELA's minimal requirements for showing a direct or indirect relationship with the railroad. Taylor does not need to prove his case, but he needs to give the court some factual basis for believing that he *may* be able to meet *Kelley's* test and avoid the inference that he has pleaded a frivolous FELA claim to stay out of federal court. *Hammond*, 848 F.2d at 97-98; *Bunnell*, 2007 WL 4531513, at *3 (piercing the pleading and remanding because the plaintiff had a "cognizable FELA claim"). As the Supreme Court stated in *Kelley*, the contacts alleged between the railroad and Taylor as ITS' employee must indicate "direction or control," not "the passing of information and the accommodation that is obviously required in a large and necessarily coordinated operation." 419 U.S. at 330; *accord, Stevens v. Trona Ry. Co.*, No. EDCV 08–1766–VAP (OPx), 2009 WL 362114, at *3 (C.D. Cal. Feb. 12, 2009)

(granting a motion to dismiss where "Plaintiff's 'dual employee' claim is supported only by legal conclusions, without any factual support. . . .").

In an effort to expedite this litigation, the court grants Taylor leave to amend his complaint. See Fed. R. Civ. P. 15(a)(2). To be clear, "[j]urisdiction is determined at the time of removal and 'once a case is successfully removed a plaintiff cannot do anything to defeat federal jurisdiction and force a remand.'" *Roman v. Grafton Transit, Inc.*, 948 F. Supp. 736, 738–39 (N.D. Ill. 1996) (quoting *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 367 (7th Cir. 1993)). Nevertheless, the record discloses no reason to think that the parties conducted discovery in state court before NS removed this case. Hence, Taylor has not had the benefit of discovery on the factual matters raised in the affidavits attached to NS' response, raising legitimate concerns about the fairness of an outright remand on this record. *Contrast Bunnell*, 2007 WL 4531513, at *3 (remanding where parties had opportunity to conduct discovery in state court, stating that "[t]his is not a case in which the parties need to commence discovery in federal court and develop a record on which the jurisdictional determination can be made"). In the interest of avoiding the time and expense of jurisdictional discovery, the court grants Taylor leave to amend his complaint to specify, if he can, the basis *at the time of removal* for his FELA claim. *See Roman*, 948 F. Supp. at 738 (citing *NLFC, Inc. v. Devcom Mid–Am., Inc.*, 45 F.3d 231, 237 (7th Cir.1995)) (considering evidence extrinsic to the complaint filed in state court because postremoval stipulation did not defeat jurisdiction but did "raise the issue of whether a sufficient amount in controversy existed at the time of removal").

7

## III. Conclusion

Now that the legal principles which the court intends to apply are clear, the court will give Plaintiff until November 8, 2016, to amend his complaint and provide, if he can, a sufficient factual foundation for his list of conclusory allegations in paragraph 5 of his complaint. See Fed. R. Civ. P. 15(a)(2). If Taylor fails to do so, the Motion to Remand will be denied.


Date:   October 25, 2016                             /s/
                                        Joan B. Gottschall
                                        United States District Judge