UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 C 5551 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the court on plaintiff James Taylor's ("Taylor") motion to remand to the state court from which the defendant, Norfolk Southern Railway Co. ("NS"), removed it. For the reasons that follow, the motion is granted.

### I. BACKGROUND

In his complaint filed in state court, Taylor pleaded a claim under a provision of the Federal Employees' Liability Act, 45 U.S.C. § 51 ("FELA") and a common law negligence claim stemming from an alleged accident that occurred on January 18, 2016 in the Calumet Yard at which Taylor worked. Taylor pleaded in his state-court complaint that although his actual employer was ITS Technologies and Logistics ("ITS"), he was at the time of the accident serving "as a contractor for the railroad; or he was the joint employee of the railroad and ITS TECHNOLOGIES AND LOGISTICS; or he was the subservant of ITS TECHNOLOGIES AND LOGISTICS that was the servant of the railroad." (Compl. ¶ 5, ECF No. 2, Ex. A.) In its notice of removal, NS asserted that "there exists no reasonable basis in fact or in law to support a claim by Plaintiff against Norfolk Southern under the FELA." (Notice Removal ¶ 6, ECF No. 2.) NS attached three affidavits to its notice of removal to substantiate its assertion. (ECF Nos. 2-3 and 2-4.) Taylor moved to remand.

1

On October 25, 2016, the court considered Taylor's state-court complaint and NS' affidavits. Applying *Kelley v. S. Pac. Co.*, 419 U.S. 318, 324 (1974), the court concluded that "[d]efendant has adequately put in issue the question of whether Taylor has a legitimate FELA claim or has done nothing more than name the statute." (Slip Op. at 6.) Rather than permit jurisdictional discovery, the court gave Taylor leave to amend his complaint "to specify, if he can, the basis *at the time of removal* for his FELA claim." *Id.* at 7.

Taylor has filed his Second Amended Complaint (ECF No. 26), and the parties have submitted supplemental briefing. NS has also filed supplemental affidavits and evidence.

## II. LEGAL STANDARD

In 28 U.S.C. § 1445(a), Congress prohibited the removal to a federal district court of ""[a] civil action in any State court against a railroad or its receivers or trustees, arising under [the FELA]." *LaDuke v. Burlington N. R.R. Co.*, 879 F.2d 1556, 1561 n. 9 (7th Cir. 1989). Removal is permitted where it has been established "beyond dispute" that there is no legitimate FELA claim. *Lackey v. Atlantic Richfield Co.,* 990 F.2d 202, 208 (5th Cir. 1993). Put another way, if the plaintiff's FELA claim, as pleaded in a complaint filed in state court, is "frivolous," remand should be denied, but "a claim cannot be said *not* to arise under the FELA . . . merely because it is found in the end not to be a meritorious claim." *Hammond v. Terminal R.R. Ass'n of St. Louis*, 848 F.2d 95, 97 (7th Cir. 1988) (citations omitted); *accord Bunnell v. Union Pac. R.R. Co.*, No. 07-cv-0686-MJR-DGW, 2007 WL 4531513, at *1 (S.D. Ill. Dec. 19, 2007).

FELA makes "[e]very common carrier by railroad . . . liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. Taylor has consistently plead in this action that ITS, not NS, was his employer

at all relevant times. (2d Am. Compl. ¶ 4.) NS does not challenge Taylor's allegation that it is a "common carrier by railroad" to which FELA applies. (*See* 2d Am. Compl. ¶ 2.) Consequently, as this court explained in its previous order on this motion, Taylor can establish his employment with NS for FELA purposes in three ways: first, by showing that he was a borrowed servant of the railroad at the time of his injury; second, if he could be deemed to have been acting for two masters simultaneously; or third, if he was a subservant of a company that was a servant of the railroad. *Kelley*, 419 U.S. at 324. "Critical to the analysis of both the borrowed servant and the dual servant theory is the issue of control." *Gowdy v. Norfolk S. Ry. Co.,* No. 07-CV-0365-MJR, 2007 WL 1958592, at *5 (S.D. Ill. July 2, 2007) (citing *Kelley*, 419 U.S. at 325-26). Taylor's state-court complaint included threadbare recitals of each possibility in the alternative. (*See* Compl. ¶ 5.) The court determined that these recitals did not withstand scrutiny under federal pleading standards, given NS' evidence. *See* Slip Op. at 5–6 (applying rule that complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court must now decide, in light of NS' evidence, whether Taylor's Second Amended Complaint meets that standard.

### III. ANALYSIS

The second amended complaint and NS' original and supplemental evidence provide a fair amount of detail about NS and ITS' relationship and question of control under the FELA. Some facts appear to be disputed, but the court's task on a motion to remand is to determine only whether plaintiff's claim is frivolous, *see Hammond*, 848 F.2d at 97 (citations omitted). As the conflict between Taylor's well-pleaded allegations on the one hand and NS' evidence on the

other is sufficient to create a jury question on employment under Seventh Circuit law, NS has not demonstrated that Taylor's FELA claim is frivolous.

**A. The Allegations in Evidence**

The court begins with the allegations in Taylor's Second Amended Complaint (ECF No. 26). Taylor pleads that his "job duties were primarily concerned with the rail operation in that he was a working supervisor of the rail car loading and unloading operation." (2d Am. Compl. ¶ 8.) In language nearly identical to the state-court complaint, Taylor alleges that "was ordered to a meeting by a NS employee at a NS yard . . . to discuss rail operations . . ., including the loading/unloading of a train" when he was struck. (*Id*. ¶ 6.) Putting aside conclusory allegations of control (*e.g.*, 2d Am. Compl. ¶¶ 7, 10, 28, 29), Taylor alleges that: (1) NS owned the sideloader cranes Taylor used to load and unload railcars (¶ 9); (2) NS controlled when and to which tracks inbound trains were assigned, subject to some input from Taylor (¶ 11); (3) different tracks at the Calumet Yard required different methods of loading and unloading (¶ 11); (4) NS decisions about to which tracks a train was assigned effectively determined what equipment was used and how many ITS employees would be involved in loading and unloading (¶¶ 12, 16, 20); (5) Taylor had to use blue signal flags and switch keys provided by NS to "lock out" a track while loading and unloading was underway (¶¶ 21–24); and (6) Taylor traveled to NS' buildings in the yard and worked with NS employees to coordinate schedules and the loading and unloading of trains (¶¶ 17–18). Taylor's second amended complaint also includes this allegation:

> Plaintiff was a working manager; his job duties included working closely with the NS operations department and NS car department; operations controlled the movement of trains; car department controlled the inspection, repair and availability of train cars to be loaded. Plaintiff managed the sideloaders, operators and spotters used to unload train. Plaintiff also was called upon to unlock the

4

> containers and trailers on the train cars by climbing on the train cars; to spot for the sideloaders and to operate the sideloaders. Plaintiff would perform the actual work as opposed to manage the work at the command of the NS operation managers. NS managers often ordered plaintiff to do the actual physical work in addition to the management of the loading and unloading of trains to expedite the process.

(2d Am. Compl. ¶ 14)

NS, on the other hand, endeavors to show that a clear line physically and operationally separated ITS' and NS' activities at the Calumet Yard. A map of the yard submitted by NS shows a gravel road bisecting the Calumet Yard. (ECF No. 27-3 Ex. A.) According to NS' evidence, this road separates the yard into two, distinct halves: NS conducts its operations on the east side, and ITS operates on the west side, which it leases from NS. (*See* Bath Suppl. Aff. ¶¶ 6–9, 16–18, ECF No. 27-3.; Lanning Suppl. Aff. ¶ 16, ECF No. 27-2.) In supplemental affidavits, ITS' Regional Vice President, Chicago, and NS' Hub Manager, Chicago Intermodal Operations, aver that, with the exception of a trailer at the entry on the yard's west side, NS maintains all of its permanent buildings on the yard's east side while ITS keeps all of its trailers on the west side. (Bath Suppl. Aff. ¶¶ 8-9; Lanning Suppl. Aff. ¶ 18.) ITS maintains the equipment used for loading and unloading and remains contractually free to use its own equipment and repair other equipment on the ITS side of the yard. (*See* ECF Bath Suppl. Aff. ¶¶ 10–14.)

**B. Taylor's FELA Claim Is Not Frivolous**

The Seventh Circuit considered whether a plaintiff's claim that he was a borrowed (some Illinois courts use the word 'loaned') servant or joint employee should go to a jury in *Williams v. Shell Oil Co.*, 18 F.3d 396 (7th Cir. 1994). ANCO Insulators, Inc. hired the plaintiff in *Williams* as a laborer for a project at a Shell Oil facility. *See id.* at 398. The district court entered judgment as a matter of law that Shell was not his employer, and the *Williams* court reversed.

*See id*. at 399, 400.  Applying Illinois law, it concluded that the questions of employment under all three categories listed in *Kelley* were for the jury.  *Id.* at 400 (citing *Am. Stevedores Co. Inc. v. Indus. Comm'n*, 97 N.E.2d 329 (Ill. 1951)) (other citations omitted).  The *Williams* court reasoned that:

> Here, the issue of whether the plaintiff was a loaned servant is a close question. Although there is strong evidence supporting the district court's conclusion that ANCO was the plaintiff's sole employer, we are hesitant to conclude that as a matter of law because it is such a fact intensive question. Both Shell and ANCO apparently followed a strict "chain of command" for the most part in giving work orders. However, Shell supervisors kept a close eye on the work and the plaintiff alleges they were not hesitant to take command at times and direct the contractor's workers. Based upon the district court's consideration only of the loaned servant doctrine, requiring total power of control, and not dual employment which allows for shared control, we believe that the plaintiff would be entitled to have a trial on the issue of employment if he can sustain a cause of action as to each remaining element.

*Id*.  Though *Williams* is not a FELA case, courts in this circuit have looked to it when deciding motions to remand in which a FELA plaintiff's pleading of railroad employment is disputed. *See, e.g., Smith v. Norfolk S. Ry. Co.*, No. 09-CV-2051, 2009 WL 960684, at *3 (C.D. Ill. Apr. 8, 2009); *Gowdy*, 2007 WL 1958592, at *4.

In the case at hand, as in *Williams*, the conflicting evidence presents a close, factual question on NS' control of Taylor.  Physical separation can weigh in favor of finding separate employment under the FELA.  *See, e.g.*, *Felton v. Se. Penn. Transp. Auth.,* 952 F.2d 59, 64–65 (3d Cir. 1991) (holding that record did not show joint employment in part because "[t]here is a notable lack of physical integration between the CTD and the Regional Rail Division").  Though further factual development would be helpful, Taylor's contentions that NS' role in scheduling rail cars' arrival times and track assignments controls the conditions of his employment appears strained.  Does an air traffic controller become a gate agent's joint employer by assigning a flight

6

to a gate? Generally, "global oversight is insufficient, as is cooperation and consultation in coordinated operations" to create a fact question on employment. *Larson v. CSX Transp., Inc.*, 835 N.E.2d 138, 142 (Ill. App. Ct. 2005) (*citing Ancelet v. Nat'l R.R. Passenger Corp.*, 913 F. Supp. 968, 970–71 (E.D. La.1995)).

Nevertheless, Taylor's allegation that NS supervisors sometimes broke the close chain of command at the Calumet Yard and ordered him to perform loading work himself stands uncontradicted by competent evidence. (*See* 2d Am. Compl. ¶ 14 (final sentence).); *see also Bunnell*, 2007 WL 4531513, at *4 (comparing complaint's allegations and plaintiff's affidavit confirming allegations with defendant's evidence and granting motion to remand). NS' regional manager, Steven Lanning, states in his supplemental affidavit that "[i]f a railroad Trainmaster has an issue that involved intermodal operations, he communicates with the [NS] Intermodal Manager, or the [NS] Division Manager, or me. He would not get involved with ITS." (ECF No. 27-2 ¶ 7.) Even if this statement can be viewed in a light favorable to NS as reflecting official policy, Lanning's affidavit does not demonstrate that he has personal knowledge of the day-to-day operations at the Calumet Yard and, therefore, whether the purported policy is followed or, as Taylor alleges, NS employees sometimes direct Taylor to load and unload cars personally. (*See id*. ¶¶ 1, 5 (averring that his office is located at 347 W. 47th Street, Chicago, IL, and stating that division manager in charge of Calumet Yard does not work at that site on a daily basis)). Put another way, Lanning's affidavit does not demonstrate that he has the personal knowledge needed to create a factual dispute about Taylor's allegations that NS employees sometimes ordered him to perform loading work.[1] *See Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656,

---

[1] Taylor also alleges that "[t]he work performed by plaintiff historically was performed by railroad employees." (2d Am. Compl. ¶ 19.) NS disputes this assertion. (Lanning Suppl. Aff. ¶ 19, ECF No. 27-2.) The court need not, and does not, resolve this factual dispute, but it notes that ITS operates as NS' contractor at its three other locations in

662 (7th Cir. 2016) (finding insufficient evidence of personal knowledge because the witness "d[id] not explain how she possibly could possess personal knowledge" of information usually "kept between the employee and the supervisor"); *Ani-Deng v. Jeffboat, LLC*, 777 F.3d 452, 455 (7th Cir. 2015) (holding human resource manager's affidavit failed to show how she had personal knowledge of the "real reason" the plaintiff's immediate supervisor demoted him).

In sum, then, NS has adduced some evidence that NS and ITS were physically separated and maintained separate operations. But in well-pleaded allegations, Taylor sets forth facts that, if true, show that NS "supervisors kept a close eye on the work and the plaintiff alleges they were not hesitant to take command at times and direct the contractor's workers." *Williams*, 18 F.3d at 400. In *Williams*, the Seventh Circuit held that a jury should decide the question of employment in materially similar circumstances. *See id.*; *see also Kottmeyer v. Consol. Rail Corp.*, 424 N.E.2d 345 (Ill. App. Ct. 1981) (holding evidence presented fact question for jury based on evidence that plaintiff worked for railroad subsidiary, railroad owned premises, and railroad's terminal manager sometimes told plaintiff and other employees of subsidiary to work more quickly and check contents of trailers).

Since Taylor has pleaded enough facts to send the question of employment to a jury,[2] even when weighed in light of NS' conflicting evidence, his FELA claim is not frivolous. *See Smith*, 2009 WL 960684, at *3; *Gowdy*, 2007 WL 1958592, at *4; *cf. Bunnell*, 2007 WL

---

the Chicago area. (*See* Bath Suppl. Aff. ¶ 3, ECF No. 27-3 (explaining that operating agreement governs operations at other three locations).)

[2] Taylor also alleges that he was on his way to a meeting NS employees "ordered" him to attend when he was injured. (2d Am. Compl. ¶ 6). NS' evidence sheds little further light on the meeting's purpose. To be a borrowed servant, the Restatement says that a person must be "employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." *Staschke v. Grand Trunk W. R.R. Inc.*, No 96 C 5755, 1998 WL 245867, at *2 (N.D. Ill. Apr. 24, 1998) (quoting Restatement (Second) of Agency § 220 (1957) (defining "servant")). NS has not shown at this point that a reasonable fact finder would be precluded from finding that Taylor was serving NS when the accident allegedly occurred. *See id.* at *4 (denying summary judgment because plaintiff submitted evidence that railroad dispatcher told him where to enter its track, and he was injured while he attempted to operate railroad's switch at the crossing).

8

4531513, at *3–4 (granting motion to remand under *Williams* based on allegations and plaintiff's affidavit that railroad had right to fire him and controlled, among other things, specific job duties, hours, and equipment used).

## IV. CONCLUSION

For the reasons given above, Plaintiff's motion to remand (ECF No. 7) is granted. This case is remanded to the Circuit Court of Cook County, Illinois, in accordance with 28 U.S.C. § 1445(a).

Date: February 1, 2017 /s/
Joan B. Gottschall
United States District Judge